UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **LAURIE J. ROBERTS,** | : | 3:06cv1598 (WWE) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **DOMINION RESOURCES, INC.,** | : | |
| and **DOMINION RESOURCES** | : | |
| **SERVICES, Inc.,** | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This action concerns the denial of long-term disability benefits under a plan sponsored by defendant Dominion Resources and administered by defendant Dominion Resources Services ("Dominion Services"). Plaintiff has filed a motion for summary judgment or for remand. Defendants have also filed a motion for summary judgment.[1]

For the following reasons, the plaintiff's motion for summary judgment and for remand will be denied, and the defendants' motion for summary judgment will be granted.

### BACKGROUND

Defendants have filed a statement of undisputed facts and supporting exhibits. Plaintiff has failed to submit a statement of facts in compliance with Local Rule 56. Accordingly, the Court assumes that plaintiff does not dispute the facts presented by defendants.

---

[1] Plaintiff does not contest defendants' argument that defendant Dominion Resources is not a proper defendant. Accordingly, summary judgment will be granted as to Dominion Resources.

1

Plaintiff worked as a Chemist II at Dominion Resources' Millstone Power Station between June 2000 and July 2005. During that time, plaintiff participated in a long-term disability benefit plan ("the Plan") sponsored by Dominion Resources and administered by Dominion Services. The Plan represents one of the benefits offered as part of the Dominion Flexible Benefits Plan ("Flex Plan").

Pursuant to the Plan, Dominion Services delegated its discretionary authority over benefit claims to MetLife as the Plan's claims administrator, which has no financial obligations with respect to benefits.

The Plan pays a percentage of a participant's monthly salary during a covered period of disability. However, benefits are not payable until six months after the employee's last day worked.

The Plan defined "disability" according to the period of time sought by the claimant for coverage. For the period of six to twelve months after the last day worked, the definition of "disability" is: "You cannot perform your job at the Company." For the period commencing twelve months after the last day worked, the definition of "disability" is: "You cannot engage in any gainful employment for which you are reasonably qualified by education, training or experience."

The claims procedure requires a claimant to contact Human Resources Center to file a claim with MetLife. If a disability claim is denied, participants may appeal the denial within 180 days.

Roberts submitted a claim for disability benefits based on chronic pain, chronic fibromyalgia and other problems. She submitted an attending physician Dr. Dwight

Ligham's statement, a "Certification of Health Care Provider" form completed by Dr. Ligham, and Dr. Ligham's patient notes.

The Certification of Health Care Provider form dated March 2, 2005 indicated that plaintiff could work eight hours per day, although she might need to take time off approximately one to two times per month. On the attending physician statement form dated June 27, 2005, Dr. Ligham stated that plaintiff could not work any hours during the day, although he provided no documentation to support his conclusion. On his office notes for plaintiff's three visits between March 2 and June 17, 2005, Dr. Ligham noted "[n]o change" in the symptoms column. He also indicated that plaintiff could engage in activities including laundry, shopping, cooking, driving and jewelry making.

MetLife contacted Dr. Ligham twice in order to request specific test results and additional medical information, including a clarification of his June assessment of plaintiff's functionality level.

On January 5, 2006, MetLife notified plaintiff that Dr. Ligham had not yet replied to either request. Plaintiff responded that she would contact Dr. Ligham to request the materials. Dr. Ligham sent MetLife a letter to request that it "advise" plaintiff that he required a payment of $400 prior to preparation of a narrative report. MetLife advised plaintiff of Dr. Ligham's request.

As of February 10, 2006, MetLife had not received any correspondence from Dr. Ligham. In a letter dated February 10, 2006, MetLife informed plaintiff that it had denied her claim for benefits and that she had a right to appeal:

> In conclusion, the medical information provided does not support a severity of functional impairment that would prevent you from performing your own job as a Chemist. In summary, there were no

> current medical findings provided to support the severe restrictions and limitations provided by Dr. Ligham, to include diagnostic testing reports in regards to a diagnosis of neuropathy/radiculopathy (such as EMG's, NCV's, etc.) or diagnostic testing to confirm a diagnosis of bilateral carpal tunnel syndrome (as noted on the Attending Physician Statement received). Dr. Ligham did not provide specific clarification as to why you were unable to return to work in any capacity. In addition, Dr. Ligham did not provide clarification on your ability to do chores, drive, shop, and participate in hobbies such as jewelry making versus your inability to return to work in any capacity.

MetLife informed plaintiff of her right to supplement her claim file by submitting information and to request copies of any relevant "documents, records, or other information" in MetLife's possession.

On appeal, plaintiff submitted magnetic resonance imaging ("MRI") of plaintiff's cervical spine and lumbar spine, x-rays of her lumbar spine, and a study showing "mild" carpel tunnel syndrome. Plaintiff also submitted a narrative from Dr. Ligham that stated:

> I have received your letter dated January 3, 2006 regarding clarification of Ms. Roberts' disability. Ms. Roberts has no work capacity. This determination is based upon her need to perform activities in a paced fashion and spend no more than an hour at a time performing any one particular activity before needing to rest (sit, stand, recline) for 20 minutes to an hour before resuming her sedentary activity. She has been unable to maintain her position at the plant because of her physical disability and the pain resulting there from, and the distracting effects from both the pain and the effects of multiple medications to improve the level of her pain.

MetLife had plaintiff's file reviewed by an independent physician consultant, Dr. Phillip Marion, who is board-certified in physical medicine and rehabilitation and who specializes in pain management.

Dr. Marion reviewed the job description for plaintiff's position and her medical

records. He found that the MRI's and x-rays indicated "mild to moderate degenerative lumbar spine disease" and showed "no significant herniated disc disease or nerve root impingement." He observed that plaintiff's results indicating carpel tunnel showed "minimal borderline slowing of the median nerves at the wrist." He concluded that plaintiff's condition required some limitations on functionality but did not prevent her from working a sedentary to light duty job with occasional lifting of up to 20 pounds. He advised that Dr. Ligham's indication of plaintiff's incapacity for work was inconsistent with her abilities to drive, shop and other activities.

In a letter dated June 12, 2006, MetLife informed plaintiff that her appeal was denied. The letter explained that MetLife's decision was based upon Dr. Marion's review of the medical documentation and his conclusion that plaintiff could perform sedentary to light duty work.

## **DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

5

If a nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Plaintiff filed this action in state court, seeking "money damages" for a wrongful denial of her long-term benefits. Defendants removed the action on the ground that the Plan is governed by ERISA. Accordingly, plaintiff's claim must be construed as an action to enforce her rights pursuant to section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

### Denial of Benefits

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Further, the plan procedures must "afford a reasonable opportunity for a full and fair review" of adverse claim determinations. § 1133(2).

The decision of an ERISA plan administrator or fiduciary to deny a claim for benefits is subject to de novo review unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the court applies the narrower arbitrary and capricious standard. Firestone Tire & Rubber Co., 489 U.S. at 115. However, if the plan grants discretion to

the administrator and the administrator is in fact influenced by a conflict of interest, then the de novo standard applies. Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000).

Here, the Plan documents confer upon the Plan the administrator "full discretion to administer the Plan in all of its details," which includes the authority to "interpret the Plan" and "decide all factual questions concerning the Plan and the eligibility of any person to participate in the Plan." The arbitrary and capricious standard would apply even if the Plan did not unambiguously confer "full discretion" to the Plan administrator. The Second Circuit has declared that the authority to "resolve all disputes and ambiguities relating to the interpretation" of a benefit plan is language that is sufficient to trigger the arbitrary and capricious standard. Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 623 (2d Cir. 2008).

Defendant Dominion Services' delegation of its discretion to an appointed claims administrator such as MetLife is authorized by the Flex Plan document and the Disability Plan Administrative Services Agreement.

Plaintiff asserts that the procedural irregularities in the administration of the claim mandate application of de novo review. Specifically, plaintiff points out that defendant rendered its decision in excess of the time period provided by the relevant federal regulations and the Plan documents. Plaintiff advances her argument in reliance upon Nichols v. Prudential Ins. Co. of America, 406 F.3d 98 (2d Cir. 2005), which held that a plan administrator's failure to render a decision constituted a "deemed denial" entitled to de novo review. The Second Circuit reasoned that the plan administrator's inaction had left the court without any decision or exercise of discretion to which the court could

defer. District courts have limited Nichols to instances where the administrator fails to issue a decision rather than where the decision is tardy. Robinson v. Metropolitan Life Ins. Co., 2007 WL 3254397, *2 (S.D.N.Y. 2007) (citing cases). The Second Circuit has also held that an a plan administrator's decision on an appeal from an untimely decision represents a valid exercise of discretion which is entitled to deference. Demirovic v. Bld. Serv. 32 B-J Pension Fund, 467 F.3d 208, 212 (2d Cir. 2006).

In this instance, the untimely denial of plaintiff's claim outlined the reasons for the denial and notified plaintiff of her right to appeal and to submit any documents or records in support of her appeal. Thus, plaintiff had notice of the deficiencies of her claim and her right to provide further documentation on appeal.

Accordingly, the Court applies the arbitrary and capricious standard to determine whether the decision represents an abuse of discretion. A decision or interpretation is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Substantial evidence" is evidence "that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995). If both sides "offer rational, though conflicting, interpretations of plan provisions," the administrator's interpretation controls. O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995). In evaluating the plan administrator's decision, the court must inquire into whether the decision "was based on a consideration of the relevant factors" and whether there has been a clear

error of judgment.  Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).

The instant administrative record reveals that the decision to deny plaintiff benefits is supported by substantial evidence.  The decision to affirm the denial of plaintiff's claim relied on the opinion of the qualified independent physician, whose report reflected his assessment of the entire medical record, including the treating physician reports and plaintiff's job description.

The Court recognizes that the denial of long-term disability benefits conflicts with plaintiff's treating physician's opinion that plaintiff has no capacity for work.  However, plan administrators are not obliged to accord special deference to the opinions of treating physicians, although they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

Courts "may not impose on plan administrators the burden of explaining their reasons for crediting reliable evidence that happens to conflict with evidence that the claimant has submitted."  Bayonne v. Pitney Bowes, Inc., 161 Fed. Appx. 144, 146 (2d Cir. 2006).   Nevertheless, MetLife explained that it could not rely on plaintiff's treating physician's assessment of her incapacity (1) because "information on file" indicated plaintiff had capacity for independent living activities and (2) because the medical documentation supported "permanent functional limitations of sedentary to light duty work" rather than no capacity for work.  Accordingly, the Court finds that the decision to

affirm the denial of benefits was not arbitrary and capricious.  Summary judgment will enter in defendants' favor.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment [docs. #18 & 35] is GRANTED, and plaintiff's motion for summary judgment [doc. #19] and motion for remand [doc. #20] are DENIED.

The Clerk is instructed to enter judgment in defendants' favor and to close this case.

Dated this __16th__ day of April, 2008, at Bridgeport, Connecticut.


_____/s/_____

WARREN W. EGINTON, SENIOR U.S. DISTRICT JUDGE